UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT COLE, *et al.,*

       Plaintiffs,

v.

MERITOR, INC., f/k/a
ARVINMERITOR, INC., *et al.,*

       Defendants.

_____/

Case Nos. 03-73872, 04-73656
(Consolidated Oct. 18, 2005)

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO
DISSOLVE INJUNCTION AND ENTER JUDGMENT FOR DEFENDANTS [123]**

## I.   INTRODUCTION

Back in 2003 and 2004, the plaintiff retirees and their union, the International Union,
United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"),
brought the two above-captioned suits against their former employers, Defendant Meritor,
Inc. and its corporate predecessors (collectively "Meritor"),[1] alleging that the retirees, their
surviving spouses, and their dependents (collectively "Retirees") were entitled under a
series of collective bargaining agreements ("CBAs") to lifetime healthcare benefits.[2]  On
December 22, 2005, this Court entered a preliminary injunction directing Meritor to reinstate
the Retirees' healthcare benefits and resume paying the full cost of these benefits.  *See
Cole v. ArvinMeritor, Inc.,* 516 F. Supp.2d 850, 880 (E.D. Mich. 2005).  The Court later
granted the Retirees' motion for summary judgment as to liability, and awarded permanent

---

   [1]At the time these actions were brought, the principal corporate defendant was
ArvinMeritor, Inc., but this company was renamed Meritor, Inc. in 2011.

   [2]The 2003 and 2004 suits were consolidated in an order dated October 18, 2005.

injunctive relief in the Retirees' favor as to their entitlement to lifetime healthcare benefits. *See Cole v. ArvinMeritor, Inc.,* 515 F. Supp.2d 791, 809 (E.D. Mich. 2006).

In each of these rulings, the Court relied in significant part on the Sixth Circuit's decision in *International Union, United Automobile, Aerospace, & Agricultural Implement Workers of America v. Yard-Man, Inc.,* 716 F.2d 1476, 1482 (6th Cir. 1983), which held that "when the parties [to a CBA] contract for benefits which accrue upon achievement of retiree status, there is an inference that the parties likely intended those benefits to continue as long as the beneficiary remains a retiree." *See Cole,* 516 F. Supp.2d at 865-66 (applying this so-called "*Yard-Man* inference"); *Cole,* 515 F. Supp.2d at 797-99 (same). Similarly, when the Sixth Circuit subsequently affirmed this Court's award of summary judgment and permanent injunctive relief in the Retirees' favor, it determined that it was bound to apply the inference recognized in *Yard-Man* and its progeny that, absent countervailing evidence, retiree benefits are vested for life. *See Cole v. ArvinMeritor, Inc.,* 549 F.3d 1064, 1069, 1073-74 (6th Cir. 2008).

Meritor timely sought rehearing of the Sixth Circuit's decision, and the case remained in a holding pattern for several years while the parties pursued settlement negotiations. In the meantime, the law governing this litigation changed considerably when the Supreme Court abrogated the *Yard-Man* line of cases. *See M & G Polymers USA, LLC v. Tackett,* __ U.S. __, 135 S. Ct. 926, 935-37 (2015). Thus, when the parties' negotiations reached an impasse in 2016 and the Sixth Circuit restored Meritor's petition for rehearing to its active docket, the Court of Appeals found that due to "a sea change in the applicable law," this Court's ruling in favor of the Retirees was "no longer sustainable." *Cole v. Meritor, Inc.,* 855 F.3d 695, 696, 699 (6th Cir. 2017). The Sixth Circuit therefore reversed this Court's

judgment in the Retirees' favor and remanded "for any further proceedings that might be necessary." *Cole,* 855 F.3d at 702.

In Meritor's view, no such further proceedings are necessary. Instead, through the present motion filed on July 19, 2017, Meritor requests that the Court dissolve its permanent injunction and enter a judgment in Meritor's favor. In support of this motion, Meritor argues that in light of the Sixth Circuit's rulings in this suit and in other cases decided in the wake of *Tackett,* the Retirees can no longer viably claim that they were granted healthcare benefits for life under the relevant terms of the CBAs negotiated by the parties. In response, the Retirees concede that the Sixth Circuit conclusively resolved the issue of "patent" CBA ambiguity in Meritor's favor, but they contend that they should be permitted to marshal evidence in support of a claim that there are "latent" ambiguities in the relevant CBA provisions that, once resolved, would demonstrate their entitlement to lifetime healthcare benefits.

On August 30, 2017, the Court heard oral argument on Meritor's motion. For the reasons stated more fully below, the Court GRANTS this motion, dissolves its permanent injunction, and dismisses this case.

## II.  ANALYSIS

The disposition of Meritor's present motion turns entirely on the proper interpretation of the Sixth Circuit's recent decision reversing this Court's judgment and remanding "for any further proceedings that might be necessary." *Cole,* 855 F.3d at 702. Accordingly, the Court begins its analysis with an examination of the Court of Appeals' ruling. This decision, in turn, relies substantially on *Gallo v. Moen Inc.,* 813 F.3d 265 (6th Cir. 2016), another Sixth Circuit ruling issued in the wake of the Supreme Court's opinion in *Tackett.* As stated

in *Cole,* the Sixth Circuit panel in *Gallo* was called upon "for the first time" to "interpret[] a specific CBA according to the contract principles espoused" by the Supreme Court in *Tackett,* and the application of these "ordinary principles of contract law" led the *Gallo* court to "conclude that the CBA before the court was unambiguous in not vesting retiree healthcare benefits for life." *Cole,* 855 F.3d at 699 (citing *Gallo,* 813 F.3d at 273-74).

Turning to this case, the panel in *Cole* found that "the facts of *Gallo* are materially indistinguishable from the facts before us," and that it therefore was bound to "reach the same conclusion." *Cole,* 855 F.3d at 699. The court explained:

> The *Gallo* court faced an identical issue: whether a series of CBAs entitled a class of retirees to lifetime healthcare benefits. *Gallo's* CBA contained terms stating that healthcare benefits for retirees "will be provided," "will be covered," and would "[c]ontinue." [*Gallo,* 813 F.3d] at 269. These provisions were determined not to be specific enough to override the CBA's general durational clause and, therefore, the healthcare benefits did not vest for life. *Id.* The *Gallo* court held that "[a]bsent a longer time limit in the context of a specific provision, the general durational clause supplies a final phrase to every term in the CBA." *Id.* In making that determination, this court did not look "beyond the contract's four corners" and ruled that, because the contract was unambiguous, the consideration of extrinsic evidence was inappropriate. *Id.* at 273-74.

> In this case, the 1968 CBA and every subsequent CBA provided that retiree healthcare benefits "shall be continued." There is no language in Exhibit B to the 1968 CBA that provides a specific expiration date for those benefits. All of the CBAs, however, included a general durational clause that terminated the agreement after three years. *See, e.g.,* Article XVIII, 1968 CBA; Article XIX of the 2000 CBA. In addition, Exhibit B to each CBA had its own durational clause, identical in wording to that previously quoted from Section 8 of the 1968 CBA,[3] that explicitly tied healthcare benefits to the continuing existence of the CBA in question.

> The "shall be continued" language in Exhibit B is thus not sufficient to vest

---

[3]As stated earlier in the Sixth Circuit's opinion, section 8 of Exhibit B to the 1968 CBA provided that "[t]his [Insurance] Agreement and [Insurance] Program as modified and supplemented by the [Insurance] Agreement shall continue in effect until the termination of the Collective Bargaining Agreement of which this is a part." *Cole,* 855 F.3d at 699.

the retirees with healthcare benefits for life. As stated in *Gallo*, "[i]f *Tackett* tells us anything, . . . it is that the use of the future tense without more — without words committing to retain the benefit for life — does not guarantee lifetime benefits." *Id.* at 271. Like the CBAs at issue in *Gallo*, the CBAs between the UAW and Meritor made commitments for "approximately three-year terms — well short of commitments for life." *Id.* at 269.

The CBAs also contained durational clauses that supplied a concrete date of expiration for retiree healthcare benefits. These durational clauses give meaning to the promise that healthcare benefits "shall be continued." That is, Meritor guaranteed healthcare benefits only until the expiration of the final CBA, nothing more. *See id.* This result is in line with the ordinary principles of contract law, which dictate that "contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement." *Id.* at 279 (quoting *Tackett*, 135 S. Ct. at 937).

*Cole*, 855 F.3d at 700.

In Meritor's view, the Sixth Circuit's reasoning precludes any further inquiry before this Court, and instead dictates that the Court must dissolve its injunction and enter judgment in Meritor's favor. The Retirees, in contrast, read the above-quoted passage as applying only "some 'ordinary' contract principles, but not all." (Retirees' 8/8/2017 Response Br. at 6.) In particular, they maintain that the Sixth Circuit examined the pertinent CBA provisions only for "patent" ambiguities — that is, ambiguities in the contract language itself — but not "latent" ambiguities — *i.e.,* contract language that appears "clear on its face to an uninformed reader," but would "cause someone knowledgeable about the real-world context of the agreement to realize that it might not mean what it says and that it is possible to interpret the [language] in more than one way." (*Id.* at 11 (internal quotation marks and citation omitted).) Accordingly, the Retirees seek an opportunity to introduce "objective extrinsic evidence" — *e.g.,* evidence of the parties' bargaining history, their course of dealings, Meritor's corporate practices and past performance, and other evidence of the parties' conduct that reflects their understanding of the meaning of their agreements — in

5

an effort to establish the existence of latent ambiguities in the seemingly clear language of the relevant CBA provisions. (*See id.* at 11-14.)

The Court agrees with Meritor that the Sixth Circuit's decision forecloses any such examination of extrinsic evidence to identify contractual ambiguities, whether patent or latent. Most notably, the Retirees proposed such an evidentiary inquiry in the Sixth Circuit proceedings, arguing that "the promise of lifetime retiree healthcare benefits is confirmed by the 'contractual context.'" *Cole,* 855 F.3d at 700. The court rejected the Retirees' various appeals to evidence of "contractual context" as bearing on the proper interpretation of the parties' agreements, explaining that this evidence did not "alter[] the conclusion that the CBAs are unambiguous in not vesting retiree healthcare benefits for life." 855 F.3d at 700. The Sixth Circuit then concluded:

> Because the language of the 2000 CBA is unambiguous, no basis for going beyond the contract's four corners exists. Legally, that is the end of the matter . . . .
>
> . . . [T]he first and best way to divine the intent of the parties is from the four corners of their contract and from traditional canons of contract interpretation. The language in the 2000 CBA, as interpreted by the ordinary principles of contract law, is unambiguous in not vesting retiree healthcare benefits for life. To rule otherwise would be inconsistent with *Gallo,* which reached the same conclusion based on a materially indistinguishable series of CBAs.

855 F.3d at 701-02 (internal quotation marks and citations omitted). This definitive ruling leaves no room for argument that the Retirees should be permitted to offer extrinsic evidence for some purpose not considered by the Court of Appeals, or that some "ordinary principles of contract interpretation" remain unexplored in the wake of the Sixth Circuit's decision.

The dissenting opinion in *Gallo* lends further support to this conclusion. Judge

6

Stranch faulted the majority in that case for "declin[ing] to address the bulk of the extrinsic evidence presented by" the plaintiff retirees, and opined that this extrinsic evidence should be brought to bear in resolving ambiguities in the parties' contract that were revealed upon examination of the "background understandings of the parties" and affirmative evidence of "known customs or usages in a particular industry." *Gallo,* 813 F.3d at 275-76 (Stranch, J., dissenting) (internal quotation marks and citations omitted). This, of course, is precisely the inquiry that the Retirees here invite this Court to undertake.[4] The majority in *Gallo,* however, eschewed the plaintiffs' appeals to "background understandings" that should inform a proper reading of the parties' agreements, and also declined the plaintiffs' invitation to consider extrinsic evidence of the parties' purported intent to grant lifetime healthcare benefits to retirees of the defendant employer. *See Gallo,* 813 F.3d at 272-73. The court instead explained:

> The first and best way to divine the intent of the parties is from the four corners of their contract and from traditional canons of contract interpretation. That language and these canons offer no evidence of any intent to fix these benefits permanently into the future. Absent ambiguity from this threshold inquiry, no basis for going beyond the contract's four corners exists.

*Gallo,* 813 F.3d at 273-74. This Court, like the Sixth Circuit panel that heard this case, must necessarily follow the lead of the *Gallo* majority, and not the views advanced in the dissenting opinion. *See Cole,* 855 F.3d at 702 (White, J., concurring) (expressing disagreement with the ruling in *Gallo,* but recognizing that "if the CBA in *Gallo* unambiguously provided for the termination of health-care benefits upon the termination

_____

[4]Indeed, Judge Stranch, like the Retirees here, expressly appealed to the concept of "latent ambiguity" as supporting the position of the plaintiff retirees in *Gallo.* 813 F.3d at 276 n.2 (Stranch, J., dissenting).

of the CBA, the instant agreement does so as well, given that the duration clause in Section 8 of the instant agreement is more specific than the clause in *Gallo*").

At the August 30 hearing on Defendants' present motion, however, counsel for Plaintiffs suggested that even if the issue of lifetime retiree healthcare benefits has been finally resolved in the wake of the Sixth Circuit's decision, this appellate ruling does not foreclose the Court from conducting further proceedings on the discrete question of Plaintiffs' entitlement to reimbursement of Medicare Part B premiums. In Plaintiffs' view, because Defendants did not separately address this issue in their Sixth Circuit petition for rehearing, and because the Court of Appeals likewise failed to separately consider whether the different CBA provisions governing healthcare benefits and Medicare premium reimbursement might warrant different readings of these two contractual promises, the Court remains free to inquire whether the relevant CBA provisions addressing Medicare premium reimbursement, when construed under ordinary contract principles, provide for full reimbursement of these premiums for a retiree's lifetime.

As a threshold matter, it bears emphasis that Plaintiffs raised this issue for the first time at the August 30 hearing, and did not so much as mention it — much less present a supporting argument of any sort — in either their response to Defendants' motion or their submissions to the Sixth Circuit following the appellate court's recent ruling. Thus, Plaintiffs have forfeited this argument, and the Court need not consider it. *See Howe v. City of Akron,* 801 F.3d 718, 742-43 (6th Cir. 2015); *Lamson & Sessions Co. v. Peters,* No. 12-4193, 576 F. App'x 538, 543 (6th Cir. Aug. 13, 2014).

In any event, the Court sees nothing in the language of the relevant CBA provisions that would lead to the result propounded by Plaintiffs at the August 30 hearing — namely,

that despite the Sixth Circuit's holding that the promise of retiree healthcare benefits is subject to the durational clauses set forth in each CBA and its Exhibit B, *see Cole,* 855 F.3d at 700, the promise of Medicare premium reimbursement is exempt from these clauses. Rather, as revealed in the Court's detailed survey of the pertinent CBA language in its preliminary injunction decision, just as a provision in Exhibit B-1 to the CBA states that healthcare coverage for retirees "shall be continued," another provision in this same exhibit similarly states that a "retiree who is enrolled for Medicare coverage . . . will, while so enrolled, receive a monthly benefit equivalent to the premium then in force." *Cole,* 516 F. Supp.2d at 856-57 (internal quotation marks and citations omitted). Accordingly, in awarding the preliminary injunctive relief sought by Plaintiffs — *i.e.,* the reinstatement of Defendants' obligation to "pay[] the full cost of health benefits for [the plaintiff] retirees," 516 F. Supp.2d at 880 — the Court did not separately analyze the two promises in Exhibit B-1 to provide retiree healthcare benefits and reimburse retirees for their Medicare premiums. Instead, the Court applied the very same reasoning — including, most notably, the *Yard-Man* inference — to determine that Defendants were bound by each of these promises to pay the promised healthcare benefits for the lifetimes of the retirees and their surviving spouses. 516 F. Supp.2d at 866-67. It surely follows that the Sixth Circuit's recent ruling operates across the board to reverse this Court's findings, leaving no room for the Court to revisit the CBA language or extrinsic evidence bearing upon either healthcare benefits or Medicare premium reimbursement.

In a final effort to avoid this result, the Retirees observe that the Sixth Circuit notably did not instruct this Court to enter a judgment in Meritor's favor, but instead held open the possibility that further proceedings "might be necessary." *Cole,* 855 F.3d at 696, 702. This

9

stands in contrast to the decision in *Gallo,* where the Sixth Circuit unambiguously directed the district court "to enter judgment for the defendant." *Gallo,* 813 F.3d at 274. Admittedly, the Court of Appeals could have been more clear in explaining why further proceedings "might be necessary" in this case. Yet, this element of uncertainty in the appellate court's instructions, standing alone, cannot overcome the Sixth Circuit's unambiguous ruling that the series of CBAs entered into by the parties, "as interpreted by the ordinary principles of contract law," do not grant lifetime healthcare benefits to Meritor's retirees. *Cole,* 855 F.3d at 702.

The Court recognizes and appreciates that the unusual procedural circumstances of this case might give rise to misgivings about the outcome here, where the Retirees are now forced to surrender a favorable ruling they apparently had secured many years ago, and where the Court of Appeals was able to revisit its 2008 decision only because of protracted settlement negotiations that kept the case alive until the law of this Circuit was overturned. Indeed, there are some who believe that the Supreme Court's decision in *Tackett* has resulted in an overly drastic course correction in Sixth Circuit law, replacing the *Yard-Man* inference with a rule that unduly favors employers. *See Gallo,* 813 F.3d at 275 (Stranch, J., dissenting); *Cole,* 855 F.3d at 702 (White, J., concurring) (recognizing that "*Yard-Man* is dead," but lamenting that *Gallo* "has installed duration clauses as the new absolute determiner of intent, regardless of the actual intent of the parties"). Yet, regardless of these considerations, the Court's obligation is to act in accordance with the decision of the Court of Appeals, and this ruling dictates that the Court's injunction must be dissolved and that this case must be dismissed.

## III.  CONCLUSION

For these reasons,

The Court hereby GRANTS Defendants' July 19, 2017 motion to dissolve injunctions

and enter judgment for Defendants [123].

SO ORDERED.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  September 6, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record
on September 6, 2017, by electronic and/or ordinary mail.

s/Carol J. Bethel
Case Manager