UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT COLE, *et al.*,

    Plaintiffs,

v.

MERITOR, INC., f/k/a
ARVINMERITOR, INC., *et al.*,

    Defendants.

                                  /

Case Nos. 03-73872, 04-73656
(Consolidated Oct. 18, 2005)

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION OF SEPTEMBER 6 DECISIONS [131]**

On September 6, 2017, the Court entered an Opinion and Order Granting Defendants' Motion to Dissolve Injunction and Enter Judgment for Defendants. (Dkt. # 129). This matter is now before the Court on Plaintiffs' motion for reconsideration filed on September 20, 2017. (Dkt. # 131).[1] Plaintiffs argue that the Court's September 6, 2017 Order is based on outcome-determinative palpable defects. Plaintiffs argue that the Order misapprehended the forfeiture principle. Plaintiffs also argue that the Order omitted key terms in the collective bargaining agreements ("CBAs") that are expressly durational, promising monthly reimbursements of Medicare Part B premiums to each retiree over 65 and surviving spouse who is receiving a monthly pension benefit. For the reasons set forth below, the Court DENIES Plaintiffs' motion.

Pursuant to Rule 7.1(h) of the Local Rules for the Eastern District of Michigan, a party may file a motion for reconsideration within fourteen days after a court issues an order to

---

[1] On September 25, 2017, Plaintiffs filed a Notice of Supplemental Authority (Dkt. # 133), which the Court has reviewed and considered.

which the party objects. Although a court has the discretion to grant such a motion, it generally will not grant a motion for reconsideration that "merely present[s] the same issues ruled upon by the court, either expressly or by reasonable implication." E.D. Mich. R. 7.1(h). To persuade the court to grant the motion, the movant "must not only demonstrate a palpable defect by which the court and the parties . . . have been misled but also show that correcting the defect will result in a different disposition of the case." *Id.*

Plaintiffs maintain that they did not forfeit the argument regarding the promise of Medicare Part B premium reimbursements, which Plaintiffs verbally raised at the August 30, 2017 hearing. Plaintiffs note that "the Part B promises have been part of plaintiffs' claims from the start" and "were enforced in *Cole I* (2005), *II* (2006), and *III* (2008)." Plaintiffs further note that, "[l]imited to a 15-page rehearing response," they could not address "every aspect of the voluminous record" before the Sixth Circuit. They claim they did not need to raise the Medicare Part B argument because Defendants "did not challenge the pension-tied Part B obligations in their rehearing petition."

The Court finds that Plaintiffs have not met their burden on a motion for reconsideration. As the Court explained in its September 6, 2017 decisions, "Plaintiffs raised this issue for the first time at the August 30 hearing, and did not so much as mention it — much less present a supporting argument of any sort — in either their response to Defendants' motion or their submissions to the Sixth Circuit following the appellate court's recent ruling." Plaintiffs' argument that Defendants did not challenge the promise of Medicare Part B premium reimbursements is not well-taken. The fact is that Plaintiffs failed to raise their Medicare Part B argument even in the face of Defendants' request that the Sixth Circuit reverse this Court's decision and order that judgment be entered in favor of

2

Defendants.  Plaintiffs again failed to raise their argument in their written opposition to Defendants' motion before this Court to dissolve the injunctions, enter final judgment for Defendants, and dismiss the complaint with prejudice.  Plaintiffs did not seek leave from the Sixth Circuit or this Court to submit additional briefing on this argument, either before or after Plaintiffs verbally raised this argument at the August 30 hearing.  This Court did not err in concluding that it need not consider this argument because Plaintiffs forfeited the issue.  *See Lamson & Sessions Co. v. Peters*, 576 F. App'x 538, 543 (6th Cir. 2014); *Howe v. City of Akron*, 801 F.3d 718, 742-43 (6th Cir. 2015).  Plaintiffs could have and should have raised this argument earlier.

Plaintiffs also argue that they are entitled to rule 56 proceedings or trial on the promise of Medicare Part B premium reimbursements to each over-65 retiree and surviving spouse receiving a monthly pension benefit.  Plaintiffs maintain that the September 6, 2017 decisions omitted expressly durational terms tying Medicare Part B premium reimbursements to pensions, which Plaintiffs argue prove that the Medicare Part B premium reimbursement obligations are vested.  Plaintiffs also note that, in *Cole v. Meritor, Inc.*, 855 F.3d 695 (6th Cir. 2017) (*Cole IV*), the Sixth Circuit did not review the provisions containing the promise of Medicare Part B premium reimbursements.  According to Plaintiffs, this promise is separate and distinct from the "shall be continued thereafter" promise analyzed in *Cole IV*.

The Court again finds that Plaintiffs have not met their burden on a motion for reconsideration.  As explained in the September 6, 2017 decisions,

> in awarding the preliminary injunctive relief sought by Plaintiffs — i.e., the reinstatement of Defendants' obligation to 'pay[] the full cost of health benefits for [the plaintiff] retirees,' 516 F. Supp. 2d at 880 — the Court did not

> separately analyze the two promises in Exhibit B-1 to provide retiree healthcare benefits and reimburse retirees for their Medicare premiums. Instead, the Court applied the very same reasoning — including, most notably, the [now-abrogated] *Yard-Man* inference — to determine that Defendants were bound by each of these promises to pay the promised healthcare benefits for the lifetimes of the retirees and their surviving spouses. 516 F. Supp. 2d at 866-67. It surely follows that the Sixth Circuit's recent ruling operates across the board to reverse this Court's findings, leaving no room for the Court to revisit the CBA language or extrinsic evidence bearing upon either healthcare benefits or Medicare premium reimbursement.

(Dkt. # 129, Pg ID 4465).

Even if Plaintiffs had not forfeited this argument, and even if the Medicare premium reimbursement promise were separate and distinct from the "shall be continued thereafter" promise analyzed in *Cole IV* such that the Court could revisit the CBA language, Plaintiffs' argument would still fail.

In Article XX, the CBAs (or "Agreement") at issue provide for an Insurance Program "by Supplemental Agreements signed by the parties simultaneously with the execution of this Agreement, which Supplemental Agreements and Plans are attached hereto as . . . Exhibit "B" and "B-1" . . . and made part of this Agreement as if set out in full herein, subject to all provisions of this Agreement."[2] In Article XIX, the Agreement also includes a general-durational clause specifying that the Agreement "shall continue in full force and effect without change until 10:00 a.m., July 19, 1994." Exhibit B, titled "Supplemental Agreement (Insurance Program)," references Exhibit B-1 as the "Program" and makes it part of Exhibit B. At Section 1, Exhibit B specifies that, in the event of any conflict, the provisions of Exhibit B will supersede the provisions of Exhibit B-1. At Section 10, Exhibit B includes its

---

[2]For simplicity, the Court will again use the 1991-1994 Rockwell-UAW Agreement as a typical example of language, which remained essentially unchanged over the relevant time period.

4

own durational clause: "This [Supplemental] Agreement and Program as modified and supplemented by this [Supplemental] Agreement shall continue in effect until the termination of the National Agreement of which this is a part." Article IV, Section 1 of Exhibit B-1 provides for reimbursement of Medicare Part B premiums:

> A retiree who is enrolled for Medicare coverage that is available by making monthly premium payments under the Federal Social Security Act, will, while so enrolled, receive a monthly benefit equivalent to the premium then in force provided the retiree is receiving a monthly pension benefit.
>
> A surviving spouse who is enrolled for such Medicare coverage will receive the same monthly benefit, provided the surviving spouse is receiving a monthly pension benefit . . . .

The phrase "until the termination of the National Agreement of which this is a part" in Exhibit B's durational clause limits Defendants' promise to provide the healthcare benefits outlined in Exhibit B-1, which include the reimbursement of Medicare Part B premiums. In turn, the "termination" date and time are set forth in the National Agreement's general-durational clause. Read in tandem, these two clauses unambiguously promise Medicare Part B premium benefits, along with the other healthcare benefits, only until the termination of the National Agreement. This contract expressly states that the general-durational clause applies to the healthcare benefit promises outlined in Exhibit B-1. *See Cole IV*, 855 F.3d at 700 ("Exhibit B to each CBA had its own durational clause . . . that explicitly tied healthcare benefits to the continuing existence of the CBA in question. . . . Meritor guaranteed healthcare benefits only until the expiration of the final CBA, nothing more. This result is in line with the ordinary principles of contract law, which dictate that 'contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement.' [*Gallo v. Moen Inc.*, 813 F.3d 265, 279 (6th Cir. 2016), *cert. denied,*

5

137 S. Ct. 375 (2016)] (quoting [*M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 937 (2015)]).").

Plaintiffs rely on *Reese v. CNH Indus. N.V.*, 854 F.3d 877 (6th Cir. 2017) (*Reese III*), decided on the same day as *Cole IV*, to argue that the segregation of the Medicare premium reimbursement promise coupled with the terms of the promise tying it to "receiving a monthly pension benefit" proves vesting (or, presumably, at least creates ambiguity). However, even *Reese III* acknowledged that "if the CBA clearly stated that the general-durational clause was intended to govern healthcare benefits, the CBA would most likely be unambiguous." 854 F.3d at 883. The Agreement at issue here, unlike the agreement at issue in *Reese III*, states that the healthcare benefits outlined in Exhibit B-1, which include the reimbursement of Medicare Part B premiums, would last "until the termination of the National Agreement." Accordingly, tying the Medicare premium reimbursement promise to pension benefits did not make the duration of the healthcare benefits ambiguous in this case. *See Watkins v. Honeywell Int'l Inc.*, __ F.3d __, No. 17-3032, 2017 WL 5163221, at *6 (6th Cir. Nov. 8, 2017).

For the reasons set forth above,

The Court hereby DENIES Plaintiffs' motion for reconsideration (Dkt. # 131).

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: November 14, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 14, 2017, by electronic and/or ordinary mail.

s/Carol J. Bethel
Case Manager